State Correctional Institution at Graterford, Bureau of Corrections, Petitioner *v.* Francis E. Goodridge, Respondent.

Argued October 15, 1984, before Judges ROGERS, DOYLE and COLINS, sitting as a panel of three.

*Susan F. Forney,* Associate Counsel, with her, *John G. Knorr, III,* Senior Deputy Attorney General, *Allen C. Warshaw,* Senior Deputy Attorney General, Chief, Litigation Section, and *LeRoy S. Zimmerman,* Attorney General, for respondent.

*Mark C. Clemm, High, Swartz, Roberts & Seidel,* for petitioner.

OPINION BY JUDGE ROGERS, February 13, 1985:

The Bureau of Corrections appeals from an order of the State Civil Service Commission (Commission) reinstating Francis E. Goodridge (respondent) to his civil service position of Corrections Officer Trainee, Probationary Status. The respondent's work was as a prison guard at Graterford State Correctional Institution.

The issue is that of whether the Commission erred in determining that the Bureau of Corrections, which dismissed the respondent for falsifying his employment application, did so on the basis of a non-merit factor within the meaning of Section 905.1 of the Civil Service Act.[1]

On his application for work, the respondent answered no to the following questions:

Have you ever resigned (quit) after being informed that your employer intended to discharge (fire) you for any reason?

---

[1] Section 905.1 of the Civil Service Act, Act of August 5, 1941, P.L. 752, *as amended,* added by Section 25 of the Act of August 27, 1963, P.L. 1257, 71 P.S. §741.905a.

Are there any circumstances in your past life which would, if they became known, disqualify you for a position in a Corrections Institution?

After the respondent began training, the appointing authority investigated his background and received information upon which it concluded that ten years earlier when the respondent was a policeman with the Nassau County New York Police Department, his commanding officer had asked him to resign after he had taken overdoses of sedatives and accidently discharged a firearm.

On the basis of the background report, the Bureau of Corrections conducted an informal hearing and thereafter dismissed the respondent.

The respondent appealed his dismissal to the Civil Service Commission. At the Commission hearing, the respondent testified that he had been a policeman for the Nassau County Police Department for seven and one-half years, when he resigned in 1973; and that the police chief had asked him to resign eight or nine times due to pending charges arising from his consumption of excessive amounts of sedatives on two occasions, during one of which he had injured himself by accidentally discharging a gun into his leg. The respondent testified that he did not resign because of the charges, but in order to search for his daughter whom his wife had taken with her when she left him. He also testified that he took drugs on those occasions because he was upset about his wife's leaving.

The respondent's former supervisor at the Nassau County Police Department testified that it was a common practice in the department to request resignations as a disciplinary device. He did not testify that the respondent would have been fired if he had not resigned.

A psychologist testified on behalf of the respondent, that the respondent did not have a longstanding personality disorder, but that he experienced a crisis emotional reaction to his marital difficulties. The psychologist opined that the respondent was psychologically stable and should be allowed to carry a weapon.

The respondent's supervisor at Graterford testified that if the psychologist's testimony had been presented at the informal hearing conducted by the Bureau of Corrections, the Bureau might not have dismissed the respondent based on alleged emotional instability. In summing up to the Commission, the Bureau's counsel made the same assertion.

The Civil Service Commission found that the respondent had not lied on his employment application and that he had terminated his employment with the Nassau County Police Department voluntarily and not on threat of being discharged. The Commission found that the respondent was psychologically capable of bearing a weapon. It concluded that the Bureau's action in dismissing the respondent, being based on a misapprehension concerning the facts of the termination of his employment, was for a non-merit factor and therefore discriminatory. The Commission ordered the respondent's reinstatement.

We first hold that the Commission's findings that the petitioner had not lied in answering "no" to the questions on his application because he was never threatened with discharge for not resigning and because there were no circumstances in his past which disqualified him for a position with the Bureau, are supported by the evidence. Indeed, the Bureau does not seriously question the Commission's findings. Its contention is that because its functionaries sincerely believed, based on the information they had

received, that the respondent had lied on his application, their action dismissing him was not a personnel action based on non-merit factors because it was taken for reasons related to merit. At argument, their counsel were consistent in this thesis, agreeing that a result of its acceptance would be that a completely blameless employee mistakenly identified as a malefactor could not be restored to his position even upon proof of the truth.

Section 905.1 of the Civil Service Act, 71 P.S. §741.905a provides as follows:

Prohibition of discrimination

No officer or employe of the Commonwealth shall discriminate against any person in recruitment, examination, appointment, training, promotion, retention or any other personnel action with respect to the classified service because of political or religious opinions or affiliations because of labor union affiliations or because of race, national origin or other non-merit factors.

The Bureau's charges of falsification of the employment application were indeed related to the respondent's fitness to become an employee. But we are concerned not with the charges. We are concerned with their basis in fact, which the respondent has been given the right to test by appeal to the Civil Service Commission and which the Commission after hearing found were baseless. This we believe established that his removal was for a non-merit factor. To hold, as the Bureau urges, that although the charges were untrue, its action dismissing him must be upheld, renders his right to appeal a nullity. The Bureau's thesis that because its functionaries believed the charges the removal was not for a non-merit factor rests on the proposition that in order to establish

an act of discrimination the victim must show that the Bureau intended to discriminate. The law is clearly to the contrary. In *Canon-McMillan School District v. Pennsylvania Human Relations Commission,* 30 Pa. Commonwealth Ct. 1, 7, 372 A.2d 498, 500 (1977), where the employer defended its allegedly discriminatory practice as being intended to achieve another, non-discriminatory objective, we wrote:

> While we note that the circumstances may not show a wrongful intent on the part of the petitioner, we are compelled to affirm the decision of the Commission finding a violation of [the Pennsylvania Human Relations Act]. In General Electric Corporation v. Pennsylvania Human Relations Commission [469 Pa. 292] 365 A.2d 649 (1976), our Supreme Court adopted the well-established rule of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e-2(a), as promulgated by the United States Supreme Court in Griggs v. Duke Power Co., 401 U.S. 424 (1971), that even employer practices which are fair in form and applied without wrongful intent are illegal if they are discriminatory in *effect,* unless justified by business necessity. (Emphasis in original.)

Surely, the action of the Bureau, although not intended to do so, had the effect of removing the respondent from his employment for a non-merit factor.

On the printed form supplied by the Civil Service Commission to persons appealing agency actions pursuant to Section 905.1, there are boxes where, by check marks, the appellants can indicate the nature of the discrimination of which they claim to be victims, such as political, religious, national origin, etc. Included is a box described ''mistake of fact,'' which was that

marked by the respondent in this case. We make this observation for the purpose of showing that the Civil Service Commission, which is given broad powers in the supervision and administration of the civil service system, has obviously interpreted the phrase ''other non-merit factors'' as including cases in which the appointing authority as here, acted upon a mistaken belief as to the facts upon which it acted. An agency's interpretation of the legislation which it is required to enforce is entitled to great weight.

We make it clear that the appointing authority is the exclusive judge of the merit or lack of merit of a probationary employee's work performance and that there is nothing in the Civil Service Act, including Section 905.1, which gives the Civil Service Commission, the judiciary or any other seat of power, the right to review the employer's judgment or to overturn its personnel actions based on that judgment.[2] In this case, however, there is no question concerning the respondent's performance of his work duties. He was removed solely for allegedly falsifying his application; but he proved in the hearing provided him by the Civil Service Act that he had not committed the act, the only act for which he was removed. We agree with the Civil Service Commission that the

---

[2] As the text of our opinion shows, we are mindful that a probationary employee is subject to dismissal at the will of the appointing authority so long as the action is not because of discrimination. We note that the Bureau misapprehends the true meaning of *Department of Health v. Graham*, 58 Pa. Commonwealth Ct. 409, 427 A.2d 1279 (1981). There we held that the Commission, having concluded that the probationary employee's discharge was not the result of discrimination, it lacked the authority to review the reasonableness of the appointing authority's judgment concerning the employee's work performance. Here, the Commission in fact decided that the respondent's dismissal was the result of discrimination because of a non-merit factor.

Bureau's action was for a non-merit factor and we affirm the Commission's order of reinstatement.

### ORDER

AND Now, this 13th day of February, 1985, the order of the State Civil Service Commission in the above-captioned matter is affirmed.

This decision was reached prior to the resignation of Judge WILLIAMS, JR.